Slip Op. 19-125

# UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| **BOSUN TOOLS CO., LTD. and CHENGDU HUIFENG NEW MATERIAL TECHNOLOGY CO., LTD.,** | |
| Plaintiff and Consolidated Plaintiff, | |
| and | |
| **DANYANG NYCL TOOLS MANUFACTURING CO., LTD. ET AL.,** | Before: Claire R. Kelly, Judge |
| Plaintiff-Intervenors, | Consol. Court No. 18-00102 |
| v. | |
| **UNITED STATES,** | |
| Defendant, | |
| and | |
| **DIAMOND SAWBLADES MANUFACTURERS' COALITION,** | |
| Defendant-Intervenor and Consolidated Defendant-Intervenor. | |

## OPINION AND ORDER

[Remanding the U.S. Department of Commerce's final determination in the seventh administrative review diamond sawblades and parts thereof from the People's Republic of China.]

Dated: September 23, 2019

Gregory Stephen Menegaz and Alexandra H. Salzman, deKieffer & Horgan, PLLC, of Washington, DC, argued for plaintiff, Bosun Tools Co., Ltd.  With them on the brief was James Kevin Horgan.

Ronald M. Wisla, Fox Rothschild LLP, of Washington, DC, argued for consolidated plaintiff, Chengdu Huifeng New Material Technology Co., Ltd. and plaintiff-intervenors, Danyang NYCL Tools Manufacturing Co., Ltd., Danyang Weiwang Tools Manufacturing Co., Ltd., Hangzhou Deer King Industrial and Trading Co., Ltd., Guilin Tebon Superhard Material Co., Ltd., Jiangsu Youhe Tool Manufacturer Co., Ltd., Quanzhou Zhongzhi Diamond Tool Co., Ltd., Rizhao Hein Saw Co., Ltd., and Zhejiang Wanli Tools Group Co., Ltd.  With him on the brief were Lizbeth R. Levinson and Brittney Renee Powell.

John J. Todor, Senior Trial Counsel, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, of Washington, DC, argued for defendant.  With him on the brief were Franklin E. White, Jr., Assistant Director, Jeanne E. Davidson, Director, and Joseph H. Hunt, Assistant Attorney General.  Of Counsel on the brief was Paul Kent Keith, Attorney, Office of the Chief Counsel for Trade Enforcement and Compliance, of Washington, DC.

Cynthia Cristina Galvez, Wiley Rein, LLP, of Washington, DC, argued for defendant-intervenor and consolidated defendant-intervenor, Diamond Sawblades Manufacturers' Coalition.  With her on the brief were Stephanie Manaker Bell, Daniel Brian Pickard, and Maureen Elizabeth Thorson.

Kelly, Judge:  This consolidated action is before the court on motions for judgment on the agency record challenging various aspects of the U.S. Department of Commerce's ("Department" or "Commerce") final determination in the seventh administrative review of the antidumping duty ("ADD") order covering diamond sawblades and parts thereof from the People's Republic of China ("PRC").  See Pl. Bosun Tools Co. Ltd.'s Mot. J. Agency R., Sept. 26, 2018, ECF No. 32; Consol. Pl.'s 56.2 Mot. J. Agency R., Sept. 26, 2018, ECF No. 34; Pl.-Intervenors' 56.2 Mot. J. Agency R., Sept. 26, 2018, ECF No. 35; see also Diamond Sawblades and Parts Thereof From the [PRC], 83 Fed. Reg. 17,527 (Dep't Commerce Apr. 20, 2018) (final results of [ADD] admin. review; 2015–2016) ("Final Results") and accompanying Issues & Decision Mem. Admin. Review [ADD] Order on

Consol. Court No. 18-00102 Page 3

Diamond Sawblades and Parts Thereof from the [PRC], A-570-900, (Apr. 16, 2018), ECF No. 24-5 ("Final Decision Memo"); Diamond Sawblades and Parts Thereof From the [PRC] and the Republic of Korea, 74 Fed. Reg. 57,145 (Dep't Commerce Nov. 4, 2009) ([ADD] orders).  Plaintiff, Bosun Tools Co., Ltd. ("Bosun") and Consolidated Plaintiff, Chengdu Huifeng New Material Technology Co., Ltd. ("Chengdu") commenced their individual actions pursuant to section 516A(a)(2)(A)(i)(I) and 516A(a)(2)(B)(iii) of the Tariff Act of 1930, as amended, 19 U.S.C. § 1516a(a)(2)(A)(i)(I) and 1516a(a)(2)(B)(iii) (2012);[1] the actions were subsequently consolidated on July 27, 2018.  See [Bosun's] Summons, May 4, 2018, ECF No. 1; [Bosun's] Compl., May 4, 2018, ECF No. 6;[2] Order at 2, July 27, 2018, ECF No. 28.  Bosun and Chengdu are both foreign manufacturers and exporters of the subject merchandise.  Bosun's Compl. at 1; Chengdu's Compl. ¶ 4, May 25, 2018, ECF No. 9, Ct. No. 18-00103.  On May 24, 2018, the court granted Plaintiff-Intervenors, Danyang NYCL Tools Manufacturing Co., Ltd., Danyang Weiwang Tools Manufacturing Co., Ltd., Hangzhou Deer King Industrial and Trading Co., Ltd., Guilin Tebon Superhard Material Co., Ltd., Jiangsu Youhe Tool Manufacturer Co., Ltd., Quanzhou Zhongzhi Diamond Tool Co., Ltd., Rizhao Hein Saw Co., Ltd., and Zhejiang Wanli Tools Group Co., Ltd.'s (collectively "Plaintiff-Intervenors"), motion to intervene as of right.  Order, May 24, 2018, ECF No. 20.  Plaintiff-Intervenors are foreign producers and/or exporters of the

---

[1] Further citations to the Tariff Act of 1930, as amended, are to the relevant provisions of Title 19 of the U.S. Code, 2012 edition.  Citations to 19 U.S.C. § 1677e, however, are to the unofficial U.S. Code Annotated 2018 edition, which reflects the amendments made to 19 U.S.C. § 1677e by the Trade Preferences Extension Act of 2015.  See Trade Preferences Extension Act of 2015, Pub. L. No. 114-27, 129 Stat. 362 (2015).

[2] Chengdu's Amended Summons and Complaint are located at ECF Nos. 8 and 9 on the docket of Ct. No. 18-00103.

Consol. Court No. 18-00102                                                                                                Page 4

subject merchandise and individually participated in this review as separate rate respondents.  See Pl.-Intervenors' Mem. P. & A. Supp. 56.2 Mot. J. Agency R. at 1, Sept. 26, 2018, ECF No. 35-2 ("Pl.-Intervenors' Br."); Final Results, 83 Fed. Reg. at 17,528.

Chengdu challenges as an abuse of discretion, arbitrary and capricious, and unsupported by substantial evidence Commerce's decision to reject and remove from the record Chengdu's second supplemental response.  See Consol. Pl. [Chengdu's] Mem. P. & A. Supp. 56.2 Mot. J. Agency R. at 11–20, Sept. 26, 2018, ECF No. 34-2 ("Chengdu's Br.").  Bosun, Chengdu, and Plaintiff-Intervenors all challenge as contrary to law Commerce's use of total adverse facts available[3] to select the rate assigned to Chengdu and all other companies qualifying for a separate rate.[4]  See id. at 21–24; Pl. [Bosun's]

---

[3] Parties and Commerce sometimes use the shorthand "adverse facts available" or "AFA" to refer to Commerce's reliance on facts otherwise available with an adverse inference to reach a final determination.  However, AFA encompasses a two-part inquiry pursuant to which Commerce must first identify why it needs to rely on facts otherwise available, and second, explain how a party failed to cooperate to the best of its ability as to warrant the use of an adverse inference when "selecting among the facts otherwise available."  See 19 U.S.C. § 1677e(a)–(b).  The phrase "total adverse inferences" or "total AFA" encompasses a series of steps that Commerce takes to reach the conclusion that all of a party's reported information is unreliable or unusable and that as a result of a party's failure to cooperate to the best of its ability Commerce must use an adverse inference in selecting among the facts otherwise available.

[4] In antidumping proceedings, Commerce presumes that the export activities of all companies operating in a non-market economy ("NME") country, like the PRC, are subject to government control.  Diamond Sawblades and Parts Thereof from the [PRC]: Decision Mem. for Prelim. Results of [ADD] Admin. Review; 2015–2016 at 4, A-570-900, PD 255, bar code 3646590-01 (Nov. 30, 2017).  The presumption is rebuttable, and companies seeking to rebut it file a separate rate application through which they must demonstrate that their export activities are de facto and de jure free of the NME-country's control.  Id.  If a company successfully rebuts the presumption, it is assigned its own separate rate.  Id.

Congress does not prescribe a method for calculating a separate rate.  Congress does, however, in 19 U.S.C. § 1673d(c)(5) prescribe a method for calculating an all-others rate; a rate assigned to non-mandatory respondent companies from a market economy country.  Commerce

(footnote continued)

Mem. Supp. Mot. J. Agency R. at 2–12, Sept. 26, 2018, ECF No. 33 ("Bosun's Br."); Pl.-Intervenors' Br. at 7–19.

For the reasons that follow, Commerce abused its discretion by rejecting Chengdu's second supplemental response. The court does not reach the parties' challenges to Commerce's application of total AFA to derive Chengdu's rate and correspondingly the use of Chengdu's rate in establishing the separate rate respondents' rate.

## BACKGROUND

Commerce's seventh administrative review of the relevant ADD order covered subject merchandise entered during the period of November 1, 2015, through October 31, 2016. Initiation of Antidumping & Countervailing Duty Admin. Reviews, 82 Fed. Reg. 4,294, 4,296 (Dep't Commerce Jan. 13, 2017). Commerce selected Chengdu and Jiangsu Fengtai Single Entity ("Fengtai") as the two mandatory respondents in this review.[5] See Selection of Respondents for Individual Examination at 8, PD 106, bar code

---

has, by practice, adopted the methodology in 19 U.S.C. § 1673d(c)(5) to calculate a separate rate. See Albemarle Corp. & Subsidiaries v. United States, 821 F.3d 1345, 1351–53 (Fed. Cir. 2016); see also 19 U.S.C. § 1673d(c)(5). Section 1673d(c)(5) states that the all-others rate shall be the weighted average of the individually investigated exporter's and producer's dumping margins, excluding any margins that are de minimis, zero, or determined entirely by AFA. As a result, the rate assigned to the successful separate rate respondents depends on the rate(s) calculated for the mandatory respondent(s). Here, Chengdu's individual rate was calculated using total AFA. Final Decision Memo at 11–12. If Chengdu's rate changes, it will change one of the inputs for calculating the separate rate respondents' rate.

[5] No party challenges Commerce's calculation of Fengtai's rate, and Fengtai is not a party in this consolidated action.

3566489-01 (Apr. 26, 2017).[6]  Pertinent here, throughout the administrative review proceedings, Commerce continued to find that Chengdu qualified for a separate rate.[7] See Diamond Sawblades and Parts Thereof From the [PRC]: Decision Mem. for [the] Prelim. Results of [the] [ADD] Admin. Review; 2015–2016 at 6–8, A-570-900, PD 255, bar code 3646590-01 (Nov. 30, 2017) ("Prelim. Decision Memo"); Final Decision Memo at 9.  Also, pertinent here, on October 3, 2017, Commerce rejected as untimely the public ("redacted") and business proprietary ("unredacted") versions of Chengdu's second supplemental response and removed all versions from the record.  See Commerce's Rejection of Chengdu's Second Suppl. Resp. at 1–2, PD 235, bar code 3625400-01 (Oct. 3, 2017) ("Commerce's Rejection Mem.").  Chengdu filed a request for reconsideration, which Commerce also denied.  See generally Chengdu's Resp. & Req. for Reconsideration of Commerce's Rejection Mem., PD 236, bar code 3627194-01 (Oct. 6, 2017) ("Chengdu's Reconsideration Req."); Commerce's Denial of Chengdu's Reconsideration Req., PD 246, bar code 3635994-01 (Nov. 1, 2017) ("Commerce's Denial of Chengdu's Reconsideration Req.").

---

[6] On June 13, 2018, Defendant submitted indices to the public and confidential administrative records underlying Commerce's final determination.  Defendant subsequently filed a corrected index to the confidential administrative record.  The relevant indices are located on the docket at ECF Nos. 24-1 and 29.  All references to administrative record documents in this opinion will be to the numbers Commerce assigned to the documents in the relevant indices.

[7] Throughout the proceedings, Commerce likewise continued to find that Bosun and the Plaintiff-Intervenors were eligible for a separate rate.  See Prelim. Decision Memo at 6–8; Final Decision Memo at 21 & n.89.

Commerce preliminarily determined that because Chengdu withheld necessary information and missed filing deadlines, its rate should be determined on the basis of total AFA. See Diamond Sawblades and Parts Thereof From the [PRC], 82 Fed. Reg. 57,585, 57,586 (Dep't Commerce Dec. 6, 2017) (prelim. results of [ADD] admin. review; 2015–2016) ("Prelim. Results") and accompanying Prelim. Decision Memo at 10–13. Commerce selected the PRC-wide entity rate of 82.05% as Chengdu's total AFA rate. Prelim. Results, 82 Fed. Reg. at 57,586; Prelim. Decision Memo at 10–13. Commerce assigned Fengtai the PRC-wide entity rate as well.[8] Prelim. Decision Memo at 13. The separate rate respondents were assigned the same rate as the mandatory respondents. Prelim. Results, 82 Fed. Reg. at 57,586; Prelim. Decision Memo at 8. On January 12, 2018, Chengdu filed a case brief with the agency challenging the preliminary determination. [Chengdu's] Case Br., PD 278, bar code 3661219-01 (Jan. 12, 2018) ("Chengdu's Agency Br."). For the final determination, Commerce continues to assign the 82.05% rate to the mandatory and separate rate respondents. Final Results, 83 Fed. Reg. at 17,528. Specifically, Commerce explains that Chengdu and Fengtai did not act to the best of their respective abilities to supply Commerce with necessary information in a timely manner and that an adverse inference continues to be necessary in selecting from the facts otherwise available. See Final Decision Memo at 7–12, 16–19, 21. Commerce also explains that it continues to calculate the rate assigned to the separate rate respondents using a simple average of the mandatory respondents' rates. Id. at 29.

---

[8] Specifically, Commerce determined that total AFA was warranted because Fengtai missed filing deadlines and impeded the review proceedings. Prelim. Decision Memo at 13.

**JURISDICTION AND STANDARD OF REVIEW**

The Court has jurisdiction pursuant to 19 U.S.C. § 1516a(a)(2)(B)(iii) and 28 U.S.C. § 1581(c) (2012), which grant the Court authority to review actions contesting the final determination in an administrative review of an antidumping duty order. This Court will uphold Commerce's determination unless it is "unsupported by substantial evidence on the record, or otherwise not in accordance with law[.]" 19 U.S.C. § 1516a(b)(1)(B)(i).

**DISCUSSION**

**I. Commerce's Rejection of Chengdu's Second Supplemental Response**

Chengdu argues that Commerce abused its discretion and acted in an arbitrary and capricious manner when it rejected Chengdu's second supplemental response ("submission").[9] See Chengdu's Br. at 11–20. Defendant responds that Commerce properly exercised its discretion because Chengdu did not comply with the 19 C.F.R. § 351.303 (2017)[10] filing requirements, had notice that the cover letter and narrative portions of the redacted version of its submission did not upload to the Enforcement and Compliance's Antidumping and Countervailing Duty Centralized Electronic Service

---

[9] Chengdu also argues that Commerce's reasons for rejecting and removing the submission from the record are unsupported by substantial evidence. Chengdu's Br. at 16–20; see also Oral. Arg. at 00:34:36–00:37:43. Chengdu's substantial evidence challenge alleges that Commerce failed to establish prejudice to either it or any of the interested parties, Oral Arg. at 00:36:30–00:37:43, which is an abuse of discretion claim. The court, therefore, will treat Chengdu's substantial evidence challenge as an iteration of its abuse of discretion claim and addresses it below.

[10] Further citations to Title 19 of the Code of Federal Regulations are to the 2017 edition.

Consol. Court No. 18-00102                                                                                           Page 9

System ("ACCESS") before the filing deadline expired,[11] and did not request to extend the deadline at any point. See Def.'s Resp. Mots. J. Agency R. at 11–20, Dec. 19, 2018, ECF No. 42 ("Def.'s Resp. Br."). For the following reasons, Commerce's decision to reject and remove from the record Chengdu's submission was an abuse of discretion.

An agency abuses its discretion when it issues a decision that "represents an unreasonable judgment in weighing relevant factors." Star Fruits S.N.C. v. United States, 393 F.3d 1277, 1281 (Fed. Cir. 2005) (citation omitted). Factors found to be relevant in reviewing Commerce's decision to reject corrective information include Commerce's interest in ensuring finality, the burden of incorporating the information, and consideration of whether the information will increase the accuracy of the calculated dumping margins. See Grobest & I-Mei Industrial (Vietnam) Co. v. United States, 36 CIT __, __, 815 F. Supp. 2d 1342, 1365–67 (2012) (holding that Commerce abused its discretion by failing to consider a separate rate certification filed ninety-five days after the established deadline where the information submitted required minimal analysis, did not result in a great burden, and, if considered, likely would have resulted in the filing party receiving a separate rate); see also NTN Bearing Corp. v. United States, 74 F.3d 1204, 1207–08 (Fed. Cir. 1995) (holding that Commerce abused its discretion where its decision not to

---

[11] Commerce set a deadline of September 22, 2017, at 5:00 p.m., for receipt of Chengdu's submission. Commerce's Rejection Mem. at 1. A filer proffering a confidential version of a document may, under 19 C.F.R. § 351.303(c)(2)'s one-day lag rule, first file the document with brackets demarking confidential information not finalized. Subsequently, the filer has one-business day to finalize the brackets and file a public version of the same document. 19 C.F.R. § 351.303(c)(2). Here, the deadline set by Commerce fell on a Friday, meaning Chengdu had until Monday, September 25, 2017, to file the finalized unredacted and the redacted versions of its submission.

use a "straightforward mathematical adjustment" to correct for certain clerical errors led to "the imposition of many millions of dollars in duties not justified under the statute.").

Here, Commerce abused its discretion by rejecting Chengdu's attempt to re-file the redacted version of a document it previously attempted to file on time but which, for reasons unclear on this record, only uploaded in part. Chengdu's counsel timely filed the complete unredacted version of the submission on ACCESS. Chengdu's Br. at 17 & n.3. It also timely served Petitioner with a PDF copy of the same via hand delivery and served all other interested parties with an electronic copy of the same on a CD via first class mail. Id. Finally, Chengdu's counsel served Petitioner and all other interested parties, via email, with the complete redacted version of the submission. Id. No party disputes Chengdu's assertion of service or receipt of the redacted and/or unredacted versions of the submission. Although Chengdu attempted to file the redacted version of the submission on ACCESS, only the subparts containing the exhibits were uploaded; the subpart containing the cover letter and narrative portion of the submission did not upload. Id. at 17–18; see also Chengdu's Reconsideration Req. at Attach. 1 (referring to the confirmation of electronic submission receipt for bar code 3622650). The record is silent on whether the failure to upload resulted from some inadvertence on Chengdu's part or some problem with the ACCESS system. It is clear, however, that before the relevant deadline expired Chengdu attempted to upload the redacted version of its submission but was only successful in uploading it in part and that it successfully uploaded the unredacted version in full. See Chengdu's Reconsideration Req. at Attach. 1. As a result, by the relevant deadline, Commerce received the complete unredacted version and a

Consol. Court No. 18-00102 Page 11

portion of the redacted version of Chengdu's submission. See id. Two days after the relevant deadline expired and within an hour of receiving two Workflow Rejection Notifications from Commerce staff with the directive to "refile th[e] [redacted] version with a cover letter and the narrative," see id. at Attach. 2, Chengdu's counsel complied and re-filled the complete redacted version of its submission. See id. at Attach. 3. Subsequently, Commerce rejected and removed from the record all versions of Chengdu's submission and denied Chengdu's request for reconsideration. See generally Commerce's Rejection Mem.; Commerce's Denial of Chengdu's Reconsideration Req.

Commerce has not explained why it would be burdensome to incorporate the information. Invocation of a "general prejudice stemming from late submissions" and the potential effect that cumulative late filings across all proceedings may have on Commerce's ability to administer its case load, Final Decision Memo at 8–9, do not constitute a reasonable explanation given the facts of this case. In fact, Commerce's explanation assumes that the submission was late in the typical sense. The facts surrounding this submission are not typical. There is no dispute that the unredacted submission was timely filed. See Chengdu's Reconsideration Req. at Attach. 1 (referring to confirmation of electronic submission receipts for bar codes 3622618 and 3622639 demonstrating timely filing of the unredacted version of the submission). There is also no dispute that Chengdu attempted to timely file the redacted version of its submission and that a portion of that submission failed to upload and needed to be re-filed. See id. (referring to confirmation of electronic submission receipt for bar code 3622650 and showing that the redacted version uploaded in part). The court, therefore, cannot

Consol. Court No. 18-00102 Page 12

conclude that Chengdu's actions infringed or delayed in any meaningful way Commerce's review of the information submitted or that it would be burdensome to incorporate the information proffered. Further, the court cannot conclude that interested parties were prejudiced or burdened by the two-day delay in filing the redacted version of the submission on ACCESS. All interested parties received the redacted and unredacted versions of the submission by the relevant deadline and had notice and opportunity to comment on the submission. Commerce received the unredacted version of the submission by the relevant deadline.[12]

Finally, Commerce's rejection of Chengdu's submission will likely undermine the accuracy of the dumping margins calculated in this case. Commerce makes no claim that anything within the submission is lacking or would otherwise lead to AFA. Therefore, it is likely that but for the untimeliness of the submission a more accurate rate would have been calculated for Chengdu and, by extension, the separate rate respondents. In light of the foregoing reasons, Commerce abused its discretion by rejecting and removing from the record Chengdu's submission.[13] On remand, Commerce must place Chengdu's

---

[12] To support its decision to reject and remove Chengdu's submission, Commerce invokes an incident from an unrelated investigation where the law firm representing Chengdu made an untimely filing on behalf of another one of its clients. See Commerce's Rejection Mem. at 2, App. 1. No evidence on this record links Chengdu to the unrelated proceeding or the client on whose behalf the law firm was acting.

[13] Chengdu also argues that Commerce's decision to accept a late filing in the Fiber from India Investigation, within the same week that it rejected and removed Chengdu's submission, demonstrates that Commerce's actions here were arbitrary and capricious. See Chengdu's Br. at 15–16 (citing Chengdu's Reconsideration Req. at Attach. 4 (reproducing Commerce's memorandum allowing a late filing in a different proceeding)); see also Decision Mem. Prelim.

(footnote continued)

Consol. Court No. 18-00102                                                                                      Page 13

submission on the record and consider it for purposes of calculating Chengdu's rate. Commerce must also recalculate any rates affected by a change to Chengdu's rate.

Defendant argues that Chengdu did not satisfy the requirements of 19 C.F.R. § 351.302(c)—filing an extension request and demonstrating that an "extraordinary circumstance" prevented timely filing—that would warrant consideration of its untimely submission. Def.'s Resp. Br. at 14; 19 C.F.R. § 351.302(c). Chengdu did not request an extension either before or after the filing deadline expired. An extension request, however, presumes that the requestor did not or will not proffer a filing by the deadline set. That is not the situation here because Chengdu did timely proffer its submission. Commerce timely received the complete unredacted version of the submission on ACCESS, it also timely received an incomplete redacted version of the submission, and the redacted and unredacted versions of the same were timely served on all interested parties. The information in the submission was provided by the deadline set and the updated version of the submission, filed two-days late, related back to the original, timely

---

Determination Less-Than-Fair Value Investigation Fine Denier Polyester Staple Fiber from India at 10–12, A-533-875, (Dec. 18, 2017), available at http://ia.ita.doc.gov/frn/summary/india/2017-27752-1.pdf (last visited Sept. 18, 2019) ("Fiber from India Investigation") (providing further background on the proceeding Chengdu is relying upon to make its arbitrary and capricious argument here). In the Fiber from India Investigation, Commerce provided a party with the opportunity to re-file an unredacted version of a document that, when originally filed, excluded 19-pages from the narrative section of the document. See Chengdu's Reconsideration Req. at Attach. 4. Chengdu relied on the Fiber from India Investigation in its request for reconsideration and brief to the agency to argue that Commerce's decision to reject and remove Chengdu's submission was arbitrary. Id. at 4; Chengdu's Agency Br. at 11–12. Commerce never addressed Chengdu's challenge. Further, although Defendant argues that Commerce's actions in the Fiber from India Investigation are distinguishable, Def.'s Resp. Br. at 18–19, any explanation it provides is a post-hoc rationalization and will not be considered by the court. Accordingly, Commerce fails to explain why its actions are not arbitrary given the factual similarities between the Fiber from India Investigation and this case.

filing. No party alleges that the complete redacted version of Chengdu's submission filed two days after the relevant deadline differed in any way from the timely filed unredacted version.

## II. Commerce's Decision to Apply the Total AFA Rate to Chengdu, Bosun, and Plaintiff-Intervenors

Bosun, Chengdu, and Plaintiff-Intervenors, all challenge as contrary to law Commerce's use of total AFA to select the weighted-average dumping margin assigned to Chengdu and the separate rate respondents. See Chengdu's Br. at 21–24; Bosun's Br. at 2–12; Pl.-Intervenors' Br. at 7–19. In light of the court's determination that Commerce abused its discretion by rejecting Chengdu's submission and corresponding order for Commerce to place on the record and consider the submission for the purposes of calculating Chengdu's rate and recalculating, if necessary, the separate rate applicants' rate, the court does not reach Bosun's, Chengdu's, and Plaintiff-Intervenors' AFA challenges.

## CONCLUSION

For the foregoing reasons, it is

**ORDERED** that Commerce shall place the business proprietary and public versions of Chengdu's second supplemental response on the record; and it is further

**ORDERED** that Commerce shall consider Chengdu's second supplemental response for purposes of calculating Chengdu's individual rate and, if there is a change to Chengdu's rate, adjust the separate rate respondents' rates accordingly; and it is further

Consol. Court No. 18-00102                                                                                          Page 15

**ORDERED** that all parties to this action shall consult with one another and file with the Court a proposed scheduling order governing how the remand proceedings will be conducted within 14 days of this date.

        /s/ Claire R. Kelly
      Claire R. Kelly, Judge

Dated: September 23, 2019
      New York, New York